IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

NANCY F. MOORE,                    *

    Plaintiff,                  *

v.                                 *      CIVIL NO: WDQ-04-2819

MICHAEL O. LEAVITT,                *
SECRETARY, U.S. DEPARTMENT
HEALTH AND HUMAN SERVICES          *

    Defendant.                  *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Nancy Moore has sued Michael Leavitt, Secretary of the
United States Department of Health and Human Services (the
"DHHS"), for employment discrimination in violation of Title VII
of the Civil Rights Act of 1964,[1] as amended ("Title VII"),
codified as 42 U.S.C. §§ 2000e to 2000e-17.  Pending is the
DHHS's motion for summary judgment.  For the following reasons,
the motion will be granted.


I.  Background

Between December 1999 and January 2004, Moore, a Health
Insurance Specialist ("HIS"), Grade 12 ("GS-12") in the
Contractor Management Branch, Division of Program Integrity
Operations, Program Integrity Group (the "PIG"), Office of

---

[1] Pub. L. No. 88-352, 78 Stat. 253.

Financial Management (the "OFM"), Health Care Financing
Administration, DHHS, applied, but was not selected, for 11
different GS-13 level positions, listed as vacancy announcement
numbers ("VANs") H-99-264 ("VAN '264"), RN-CO-00-025 ("VAN
RN'025"), RN-CO-00-032 ("VAN RN'032"), H-00-288 ("VAN '288"), H-
01-115 ("VAN '115"), H-01-143 ("VAN '143"), H-01-116 ("VAN
'116"), H-01-133 ("VAN '133"), H-02-025 ("VAN '025"), H-02-221
("VAN '221"), H-04-001 ("VAN '001").  Am. Compl. 3-33.

Moore contends that she was also constructively denied two
temporary GS-13 "Detail" positions in June 2003 (the "June 2003
Detail") and December 2003 (the "December 2003 Detail"), for
which the DHHS did not advertise a vacancy, and for which she did
not apply.[2]  *Id.* at 27-30.

Moore sued under Title VII alleging that the DHHS refused to
promote her because of her race (African-American) (Count I), and
in retaliation for prior Equal Employment Opportunity ("EEO")
activity (Count II).  Moore also alleged that she was subjected
to a hostile work environment (Count III) when her supervisors:
(1) subjected her to verbal abuse; (2) failed to act on a
racially insensitive email; (3) reassigned her duties and
responsibilities; (4) assigned her to inexperienced team leaders;
(5) placed her on a "production schedule;" and (6) did not give

---

[2] Since filing suit, Moore has been promoted to the GS-13
level; she is currently an HIS in the Division of Medical Review,
PIG, OFM, Center for Medicare and Medicaid Services, DHHS.

her the work assignments she requested.   Am. Compl. 10-13.

On June 14, 2005, the DHHS moved to dismiss or for summary judgment on the Amended Complaint.   In its February 15, 2006 Memorandum Opinion and Order, the Court decided that Moore's allegations of duty reassignment, assignment under inexperienced leaders, being placed on a production schedule, and not getting her requested assignments would be addressed as part of her retaliation claim.   Papers No. 41, 42.   The Court evaluated Moore's allegations of being subjected to verbal abuse and her supervisors failing to act on a racially offensive email as part of her hostile-work-environment claim, which the Court dismissed for the reasons stated in its Memorandum Opinion.   *Id*.   As to Moore's discrimination and retaliation claims, the Court denied the DHHS's motion to dismiss, and denied its motion for summary judgment without prejudice to allow Moore additional time for discovery.   *Id*.

The DHHS now moves for summary judgment on the remaining counts (I and II), arguing that: (1) Moore cannot establish a *prima facie* case of employment discrimination or retaliation; (2) the DHHS has provided legitimate, non-discriminatory reasons for not selecting her; and (3) there is no evidence that the DHHS's proffered reasons are pretextual.

3

II.  Discussion

A.  Legal Standards

1.  Standard of Review for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Only "facts that might affect the outcome of the suit under the governing law" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.  The court must also view any inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party "must present affirmative evidence in order to

defeat a properly supported motion for summary judgment."
*Anderson,* 477 U.S. at 257.   The mere existence of a "scintilla"
of evidence is insufficient.   *Id*. at 252.   If the nonmoving party
fails to show an essential element of his case on which he will
bear the burden of proof at trial, all other facts are rendered
immaterial, and the moving party is entitled to a judgment as a
matter of law.   *Celotex*, 477 U.S. 317, 323; Fed. R. Civ. P.
56(e).


2.  Establishing Employment Discrimination Claims under Title VII

     Title VII protects employees from workplace discrimination:
(1) based on the employee's race, color, religion, sex, or
national origin (42 U.S.C. §§ 2000e-2(a)); or (2) in retaliation
for opposing unlawful discrimination practices or engaging in EEO
activity under Title VII (42 U.S.C. § 2003e-3(a)).

     A plaintiff may avoid summary judgment on a Title VII
discrimination claim via "two avenues of proof": (1) by
establishing through direct or circumstantial evidence a genuine
issue of material fact concerning whether the prohibited
characteristic motivated the employer's adverse employment
action; or (2) by the "pretext" framework established by the
Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,
807 (1973), "under which the employee, after establishing a prima
facie case of discrimination, demonstrates that the employer's

proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).  The pretext framework "'compensat[es] for the fact that direct evidence of intentional discrimination is hard to come by'" by "giv[ing] plaintiffs who lack direct evidence a method for raising an inference of discrimination."[3] *Diamond*, 416 F.3d at 318 (*quoting Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring in the judgment)).

a.  Establishing a *Prima Facie* Case of Discrimination

To proceed under the *McDonnell Douglas* pretext framework, the plaintiff first must raise an inference of unlawful discrimination by proving a *prima facie* case by a preponderance of the evidence.  *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

b.  Defendant's Production of Rebuttal Evidence

After the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce

---

[3] The Fourth Circuit noted that the pretext framework "is of little value when direct evidence of discrimination is available." *Diamond,* 416 F.3d at 319 n.4.

evidence of a non-prohibited reason for the adverse employment
action.  *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248,
254 (1981).  "The defendant need not persuade the court that it
was actually motivated by the proffered reasons.  It is
sufficient if the defendant's evidence raises a genuine issue of
fact as to whether it discriminated against the plaintiff."  *Id.*
(citation omitted).  "Job performance and relative employee
qualifications are widely recognized as valid, non-discriminatory
bases for any adverse employment decision."  *Evans*, 80 F.3d at
960.  If the defendant carries this burden of production, the
presumption of intentional discrimination is rebutted and "drops
from the case."  *Burdine,* 450 U.S. at 255, 255 n.10.


c.  Establishing Pretext

     Once a defendant articulates a legitimate reason for an
adverse employment decision, a plaintiff must prove by a
preponderance of the evidence that the employer's reasons are
mere pretexts for unlawful discriminatory motives.  *Dennis v.
Columbia Colleton Medical Ctr., Inc.,* 290 F.3d 639, 646 (4th Cir.
2002).  To prove pretext, a plaintiff must either show that the
employer's explanation is "'unworthy of credence'" or offer other
evidence that is sufficiently probative of intentional
discrimination.  *Mereish v. Walker* 359 F.3d 330, 336 (4th Cir.
2004) (*quoting Burdine*, 450 U.S. at 256).  "In a failure to

7

promote case, the plaintiff must establish that she was the
better qualified candidate for the position sought." *Evans*, 80
F.3d at 960. "The plaintiff always bears the ultimate burden of
proving that the employer intentionally discriminated against
her." *Evans*, 80 F.3d at 959; *accord Burdine*, 450 U.S. at 256.


3.   Affidavits in Opposition to Motions for Summary Judgment

      An affidavit filed in opposition to a motion for summary
judgment "must set forth specific facts showing that there is a
genuine issue for trial;" the party opposing summary judgment
"may not rest upon the mere allegations or denials of the adverse
party's pleading." Fed. R. Civ. P. 56(e). "Federal Rule of
Civil Procedure 56(e) specifically requires that affidavits
submitted on summary judgment contain admissible evidence and be
based on personal knowledge." *Evans*, 80 F.3d at 962. Thus
hearsay, conclusory statements, and "self-serving opinions
without objective corroboration" will not be considered by the
court. *Id.*

      Furthermore, "[i]t is well recognized that a plaintiff may
not avoid summary judgment by submitting an affidavit that
conflicts with earlier deposition testimony." *Alba v. Merrill
Lynch & Co.,* 198 F. App'x 288, 300 (4th Cir. 2006) (*quoting
Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("A
genuine issue of material fact is not created where the only

issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.")).

B.   Analysis

1.   Discrimination in Promotion

a.   The *Prima Facie* Elements

To prove a *prima facie* case of promotion discrimination, the plaintiff must prove that she: (1) is a member of a protected class; (2) applied for the position in question; (3) was qualified for the position; and (4) was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.   *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994).

i.   Protected Class

As an African American, Moore is a member of a protected class under Title VII, and meets the first *prima facie* element for her promotion discrimination claim.   *Williams v. Staples, Inc.,* 372 F.3d 662, 668 (4th Cir. 2004).

ii.   Application

It is undisputed that Moore applied for all of the VANs, but she admits not applying for either of the Details.   Moore Aff. ¶¶ 3, 27, 35.   Moore alleges that she did not know about the Details

because the DHHS did not properly canvass employees to make them aware of the opportunities.   *Id*.

"[I]f the employer fails to make its employees aware of vacancies, the application requirement may be relaxed and the employee treated as if she had actually applied for a specific position."  *Williams v. Giant Food Inc.,* 370 F.3d 423, 431 (4th Cir. 2004).  As Moore claims that she was not informed that the Detail positions were available, there is a genuine issue of fact to withstand summary judgment as to the second *prima facie* element of her promotion discrimination claim for the Details as well.


iii.  Qualification

Moore fails to establish the third *prima facie* element as to her failure to select for VAN RN'025 because she has not evidenced that she was qualified for the position.  Moore was not considered qualified because she did not have the required experience dealing with Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS") staff.  Def.'s Mot. Ex. 2 (Report of Investigation 1 ("ROI-1")), Ex. 28 at 1-2.  Moore does not dispute this disqualification; instead she alternately asserts that she was unfairly denied the opportunity to obtain DMEPOS experience, and her experience with Durable Medical Equipment Regional Carriers ("DMERCS") should have been

10

considered the functional equivalent of DMEPOS experience, but provides no evidence to sustain either of those conclusory allegations.  Moore Aff. ¶¶ 11-12.  Accordingly, Moore fails to state a *prima facie* claim for VAN RN'025.


iv.  Circumstantial Evidence of Discrimination

The DHHS argues that Moore fails to state the fourth element of a *prima facie* case as to its failure to select her for VANs RN'032 and '115 because no one was selected for those positions; thus there is insufficient evidence to infer discrimination. ROI-1, Ex. 10 at 3, Ex. 13 at 4-5, Ex. 38 at 2.

Although the burden of establishing a *prima facie* case of disparate treatment is "not onerous," *Burdine*, 450 U.S. at 253, to create and inference of discrimination, a plaintiff must at least demonstrate that her "rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 358 n.44 (1977). Consequently, "[w]hen a government agency cancels a vacancy announcement and no one outside the protected class is hired to fill the position, the plaintiff cannot establish her *prima facie* case because she cannot satisfy the fourth prong of the analysis." *Bowie v. Ashcroft,* 283 F. Supp. 2d 25, 31 (D.D.C.

2003).

Moore argues that the position for VAN '115 was later re-posted as VAN '143 "with changes that favored a certain candidate and which were to [her] disadvantage." Moore Aff. ¶ 16. She also contends that "it would be a mistake to accept the [DHHS's] assertion that VAN RN'032 was never filled," because the DHHS filled other GS-13 positions in the following years that required the same prerequisites, including the position to which she was promoted in 2004. *Id*. Moore does not show that she or other members of her protected class were unable to compete for those subsequent VANs, or that any changes in prerequisites disadvantaged her because of her race or prior EEO activity, rather than her comparative qualifications. To the contrary, she did compete for VAN '143, and her *prima facie* claim as to that non-selection is addressed below. As to the alleged repackaging of VAN RN'032, Moore offers us no information other than her own promotion to what she claims is a similar position. Accordingly, Moore fails to state a *prima facie* claim for promotion discrimination for VANs RN'032 and '115.

Moore also fails to carry the burden of the fourth *prima facie* element for her claim on the December 2003 Detail. Moore acknowledges that the selectee for the December 2003 Detail, Lynn Merritt-Nixon, is an African American. Am. Compl. 28. Moore cannot allege an inference of discrimination against a protected

12

class in an instance in which a member of that class was
selected.

As to the remaining eight promotion selections, VANs '264,
'288, '143, '116, '133, '025, '221, and '001, and the June 2003
Detail, Moore presents enough evidence on the *prima facie*
elements to bring the Court to the next step of the *McDonnell
Douglas* analysis*.*


b.  Rebuttal Evidence

For each of the remaining instances in which Moore has
raised genuine issues of a *prima facie* case of promotion
discrimination, the DHHS has produced legitimate reasons for her
non-selection to rebut the presumption of discrimination based on
race or prior EEO activity.

For VAN '264, the DHHS shows that the selection panel
concluded that the selectee's communication skills were superior
to Moore's.  ROI-1, Ex. 14 at 3, Exs. 19, 20.

For VAN '288, the panelists noted that the selectee had
provided detailed examples of the specialized expertise sought
for the position, which Moore's application failed to
demonstrate.   Def.'s Mot. Ex.4 ("ROI-2"), Ex. 13 at 3, Ex. 14
at 3.

For VAN '143, the selectee was found to be significantly
more experienced in subject areas essential to the position.

13

ROI-2, Ex. 15 at 6, Ex. 16 at 3-4, Ex. 17 at 2-4.

For VAN '116, the panelists found that the selectee's answers in the interview showed a detailed understanding of program she would be implementing, while Moore's answers were confused, and indicated a limited understanding of the program. ROI-2, Ex. 15 at 4-5, Ex. 18 at 3, Ex. 19 at 2-3.

For VAN '133, the panelists found the selectee's application to be "far superior" to those of the other applicants, including Moore's.  ROI-2, Ex. 20 at 4-5, Ex. 20 at 2-3.

For VAN '025, the panelists decided that the selectee's performance in the interview was superior to that of Moore, whose responses were found to lack substance.  ROI-2, Ex. 11 at 7-8.

For VAN '221, each panelist concluded that the selectee was the best qualified candidate for the position   Def.'s Mot. Ex. 9 ("ROI-3"), Ex. 7 at 3-4, Ex. 8 at 3-4, Ex. 9 at 3.

For VAN '001, the selectee received the panelists' highest ability ratings, while Moore was found to lack sufficient knowledge in budgeting matters and writing experience.   Def.'s Mot. Ex. 17 ("ROI-5"), Ex. F5 at 2, Ex. F12.

Finally, as to the June 2003 Detail assignment, the DHHS has produced evidence that the PIG managers were told to solicit applications for the position, and the selectee was the only person who showed interest.   Def.'s Mot. Ex. 12 ("ROI-4"), Ex. 7 at 2-3.

14

b.  Pretext

Moore has produced no evidence to challenge the DHHS's
rebuttal evidence that she was less qualified than the chosen
candidates for those VANs listed in the preceding section.
Although Moore argues that she was better qualified than the
selectee for each of the VANs and the June 2003 Detail, her
deposition testimony indicates that she lacks the necessary
personal knowledge of the selectees' professional experience and
qualifications to make a valid comparison.[4]  Ex. 22 at 127-29,
138, 146, 159, 165, 176, 182, 185, 190, 198.  Moore's conclusory
assertions of her superior qualifications do not make the DHHS's
proclaimed reasons for her non-selection a genuine issue for
trial.  *Evans*, 80 F.3d at 960.

As to the June 2003 Detail selection, Moore argues that the
DHHS's failure to adequately canvass employees for such Details,
allegedly in violation its own procedures and the provisions of
Article 27 of the Master Labor Agreement (ROI-4, Ex. 13), is
evidence of racial discrimination.  First, it is difficult to
ignore the fact that the selectee for the December 2003 Detail,
Merritt-Nixon, is African-American.  Am. Compl. 28.  Second,
Moore offers no evidence to explain how the DHHS's failure to

---

[4] In several instances, she believes she was the more
experienced candidate simply because she had worked at the DHHS
longer than the selectee.  Moore Aff. ¶¶ 13,26; Ex. 22 (Moore
Deposition) at 124-25, 146, 184.

conduct a competitive Detail selection process only disadvantaged members of her protected class.  Title VII's anti-discrimination provisions are "not meant to remedy every procedural flaw that exists in an employer's selection process." *Langerman v. Thompson,* 155 F. Supp. 2d 490, 500 (D. Md. 2001).

Moore also alleges that the DHHS has a practice of pre-selecting candidates for positions before conducting the formal selection process.  Moore argues that even if evidence of pre-selection alone is not sufficient to prove pretext, it can be probative of discriminatory motive.

Moore is correct that evidence of preselection is not sufficient to prove racial discrimination or pretext.  *Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248, 271 (4th Cir. 2005); *Blue v. U.S. Dep't of the Army*, 914 F.2d 525, 541 (4th Cir. 1990).  "The argument that a supervisor may have preselected an employee for a promotion 'is not sufficient evidence for jurors reasonably to conclude' that the defendants' explanation for hiring [a selectee] was pre[]text." *Anderson,* 406 F.3d at 271 (citation and internal quotation marks omitted).  "If one employee was unfairly preselected for the position, the preselection would work to the detriment of all applicants for the job, black and white alike." *Blue,*, 914 F.2d at 541.

Although it is conceivable that a plaintiff could establish pretext by producing evidence of pre-selection according to

16

unlawfully discriminatory criteria, Moore has not done so in this case.  Apart from the allegations in her own affidavit, Moore proffers the testimony of Brenda C. Hicks, a panelist for the VAN '221, who remarks that the DHHS's "selection process seems inherently subjective[;]. . .few jobs arise . . . that are not targeted for someone so the selection process is not perfect or sometimes even fair but it is the only process [they] have." ROI-3, Ex. 8 at 4.  But Hicks also testifies that she "felt [the selectee for VAN '221] was the best qualified" for the position, cannot say "whether he was preselected for the job or not," and has "no reason to think race or EEO activity were factors in [the other selection panelists'] decisions and actions." *Id*. at 4-5.

Moore's final argument for pretext is her assertion that African Americans are statistically under-promoted to the GS-13 level in the PIG.  Moore Aff. ¶¶ 14-15 46(d).  She cites the DHHS's response to her interrogatories, which states that "it is believed that there have been 21 persons promoted to GS-13 within PIG from 1998 through 2005.  Three of those persons are African American[s]."  Moore provides no other information to support her conclusion, and in her deposition testified that she has "no idea" how many people work in the PIG, and is unsure of what percentage of PIG employees are African-American and how many of those promoted are Caucasian.  Ex. 22 at 39, 89, 93.  Taking the inadequacy of Moore's statistical evidence aside, this Court has

17

held that statistical evidence alone is "not sufficient to prove pretext in individual disparate treatment cases." *Bostron v. Apfel,* 104 F. Supp. 2d 548, 554 (D. Md. 2000).

Moore has not produced sufficient evidence that: (1) she was better qualified than the selected candidates; or, (2) even if she was not better qualified, that unlawful discrimination was the more likely motive for her non-selection for a reasonable jury to find that the DHHS's legitimate reasons for her non-selection are pretext for discrimination.  Accordingly, the Court will grant summary judgment for the DHHS on Count I.


2.  Retaliation

a.  The *Prima Facie* Elements

To establish a *prima facie* case of retaliation under Title VII, the plaintiff must prove that: (1) she engaged in a protected activity, such as filing an EEO complaint; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse action.  *Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001).


b.  Evidence of Retaliation

As evidence of adverse employment actions, Moore proffers her non-selection for the VANs and Details discussed above, along

18

with her own affidavit testimony that her DHHS supervisors: (1)
reassigned her duties to other PIG personnel; (2) assigned her to
inexperienced team leaders; (3) placed her on a "production
schedule;" and (4) did not give her the work assignments she
requested.

Having analyzed Moore's promotion discrimination claims
under the *McDonnell Douglas* framework, the Court has concluded
that she fails to produce evidence sufficient for a reasonable
fact-finder to infer a prohibited motive--either race or
retaliation--for her non-selection.  Left for analysis are her
remaining allegations of reprisal.

Title VII's "anti-retaliation provision protects an
individual not from all retaliation, but from retaliation that
produces an injury or harm." *Burlington N. and Santa Fe Ry. Co.
v. White*, 126 S. Ct. 2405, 2414 (2006).  For the alleged
retaliation to be actionable, the "plaintiff must show that a
reasonable employee would have found the challenged action
materially adverse, which in this context means it well might
have dissuaded a reasonable worker from making or supporting a
charge of discrimination." *Id*. at 2415 (citations and internal
quotation marks omitted).  Although the "typical requirements" of
an adverse employment action in this circuit are "discharge,
demotion, decrease in pay or benefits, loss of job title or
supervisory responsibility, or reduced opportunities for

promotion," *Boone*, 178 F.3d at 255, *White* instructs that other factors may be considered; but there "is still a heavy burden for the plaintiff: the alleged adverse action must be *material*." *Csicsmann v. Sallada*, No. 05-2087, 2006 WL 3611729, at *4 (4th Cir. Dec. 12, 2006) (unpublished opinion).

Moore alleges that when Melanie Combs became her supervisor, she transferred responsibility for ten of Moore's "program issues" to other PIG employees; and, in 2001 and 2002, her subsequent supervisor, Beth Giebelhaus, reassigned two other duties.  Am. Compl. ¶¶ 6-7.  A "reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect on her." *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).  Moore makes no such showing.  Her "evidence" of these reassignments is limited to her affidavit testimony, which merely references the allegations in her Amended Complaint, and provides no clue how these changes in work assignments were materially adverse.[5] Moore Aff. ¶ 4.

---

[5] Moore contends that her retaliation claim is corroborated by the affidavit of a co-worker, Debbie Skinner, who remarks that she "can see [Giebelhaus] retaliating against [Moore] or someone else over filing EEO complaints."  ROI-2, Ex. 23 at 5.  This speculative remark is not probative of Giebelhaus's motives, and Skinner further states that she "d[oes] not know if [Moore's] race is a factor in their relationship," "know[s] nothing of [Moore's] past EEO activity," and does not know whether Moore's strained relationship with Giebelhous "is a personality conflict or what." *Id*. at 3-5.

Moore's remaining allegations of retaliation suffer from the same lack of support.  Her affidavit simply re-alleges that she was "asked to work in groups under inexperienced leaders," "treated differently" by being "placed on a production schedule," and "was not given work assignments that [she] requested."  *Id*. Moore's assertion that "no one else has been placed on such a production schedule" is based "[u]pon information and belief." Am. Compl. ¶ 8.  These allegations were enough for her claim to survive the DHHS's motion to dismiss, but in the year since the Court denied the DHHS's motion for summary judgment to allow Moore additional time for discovery, she has apparently found nothing probative of how these employment actions were materially adverse to create a genuine dispute on this *prima facie* element. Accordingly, the Court will grant summary judgment for the DHHS on Count II.


III.  Conclusion

For the reasons stated above, the DHHS's motion for summary judgment on Counts I and II will be granted.



February 9, 2007                        _____/s/_____
Date                                    William D. Quarles, Jr.
                                        United States District Judge


21